UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

GAMZE ZIVALI, Individually and on Behalf
of All Others Similarly Situated,

                           Plaintiff,

    vs.

AT&T MOBILITY LLC, et al.,

                      Defendants.

———————————————————— x

Civil Action No. 08-cv-10310

CORRECTED PLAINTIFFS' OPPOSITION
TO DEFENDANT AT&T MOBILITY,
LLC'S MOTION FOR SUMMARY
JUDGMENT

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................1

II.  AT&T Cannot Obtain Summary Judgment Solely on Assertions of Legality and
     Policy Statements that Conflict with Plaintiffs' Substantial Evidence ................................2

III.  AT&T Required Plaintiffs to Perform Job Functions Outside MyTime Where
      Their Time Could Not Be Directly Recorded.......................................................................5

IV.  AT&T Failed to Keep an Accurate Record of All Hours Worked .....................................7

     A.  MyTime Was Configured to Prevent Plaintiffs from Recording All Hours
         Worked..................................................................................................................9

     B.  Managers Failed to Make Adjustments for Time Worked Off the Clock ..............9

     C.  AT&T's Policies Resulted in Overtime Not Being Recorded ..............................11

     D.  Although It Could Have Done So, AT&T Did Not Provide Employees
         with an Appropriate Means of Having Off-the Clock Overtime Recorded...........13

V.  Substantial Evidence Shows AT&T's FLSA Violations of Timekeeping
    Requirements Resulted in Its Failure to Pay Overtime to Plaintiffs...................................16

    A.  Plaintiffs' Evidence of Unpaid Overtime Meets Their Burden of Proof
        Under Mt. Clemens...............................................................................................16

    B.  Representative Testimony from 29 Plaintiffs Shows AT&T's Policies,
        Practices and Timekeeping System Resulted in Substantial Unpaid
        Overtime ..............................................................................................................18

    C.  AT&T's Internal Monitoring Suggests Off-the-Clock Work in the Few
        Areas Where AT&T Can Monitor ........................................................................19

    D.  MyTime Records Show a Systematic Failure to Adjust Timekeeping
        Records so as to Record and Pay for All Hours Worked.......................................20

    E.  COU Records Show Off-the-Clock Work in the Few Instances Where
        AT&T Has Bothered to Look ...............................................................................21

VI.  Substantial Evidence Shows AT&T Knew Its Policies, Practices and Systems
     Denied Overtime for Off-the-Clock Work ........................................................................22

VII.  Recently AT&T Has Internally Acknowledged Its Off-the-Clock Work Problem,
      but Has Still Failed to Fix It.............................................................................................23

- i -

**Page**

VIII.  Plaintiffs Are Entitled to Compensation for Time Spent Working Off the Clock
       While Opening and Closing AT&T Stores ....................................................................24

       A.    Opening and Closing Functions Constitute Work that Requires
             Compensation Under the FLSA ............................................................................24

       B.    The Time Plaintiffs Spent Opening and Closing the Retail Stores Was Not
             *De Minimis* ...............................................................................................................26

IX.   The Evidence Shows AT&T's FLSA Violations Were Knowing and Willful,
      Resulting in a Three-Year Statute of Limitations ...............................................................27

X.    CONCLUSION....................................................................................................................30

## TABLE OF AUTHORITIES

Page

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).....................................................................................................2, 3

*Anderson v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946)..................................................................................................... *passim*

*Brennan v. Qwest Commc'ns Int'l, Inc.,*
No. 07-2024 ADM/JSM, 2010 WL 2901002
(D. Minn. July 20, 2010)...........................................................................................17, 18, 19

*Caserta v. Home Lines Agency, Inc.,*
273 F.2d 943 (2d. Cir. 1959)....................................................................................22

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)....................................................................................................2

*Chao v. Gotham Registry, Inc.,*
514 F.3d 280 (2d Cir. 2008).......................................................................................3

*Clark v. City of New York,*
No. 06 Civ. 11397(GEL), 2008 WL 3398474
(S.D.N.Y. June 16, 2008)...........................................................................................25, 27

*Clarke v. JPMorgan Chase Bank, N.A.,*
No. 08 Civ. 2400 (CM) (DCF), 2010 WL 1379778
(S.D.N.Y. Mar. 26, 2010) ...........................................................................................27, 28

*Dunlop v. City Elec., Inc.,*
527 F.2d 394 (5th Cir. 1976) .....................................................................................25

*England v. Advance Stores Co. Inc.,*
263 F.R.D. 423 (W.D. Ky. 2009).................................................................................19, 26, 27

*Farmer v. DirectSat USA, LLC,*
No. 08 C 3962, 2010 WL 3927640
(N.D. Ill. Oct. 4, 2010)...............................................................................................19

*Fowler v. Land Mgmt. Group Inc.,*
978 F.2d 158 (4th Cir. 1992) .....................................................................................28

*Gorman v. Consol. Edison Corp.,*
488 F. 3d 586 (2d Cir. 2007)......................................................................................25, 26

Page

*Hartford Fire Ins. Co. v. Goodman Mfg. Co., L.P.*,
   No. 09 Civ. 10090(JSR), 2010 WL 326011
   (S.D.N.Y. Aug. 4, 2010) ...........................................................................................................4

*Herman v. RSR Sec. Servs.*,
   172 F.3d 132 (2d Cir. 1999)....................................................................................................28

*Hodgson v. Katz & Besthoff, #38, Inc.*,
   365 F. Supp. 1193 (W.D. La. 1973).........................................................................................8

*Holowecki v. Fed. Express Corp.*,
   644 F. Supp. 2d 338 (S.D.N.Y. 2009)......................................................................................3

*Holzapfel v. Town of Newburgh*,
   145 F.3d 516 (2d. Cir. 1998)..................................................................................................22

*IBP, Inc. v. Alvarez*,
   546 U.S. 21 (2005).................................................................................................................25

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
   239 F.R.D. 363 (S.D.N.Y. 2002) ...........................................................................................28

*Knight v. U.S. Fire Ins. Co.*,
   804 F.2d 9 (2d Cir. 1986)..........................................................................................................2

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
   274 F. 3d 706 (2d Cir, 2001)......................................................................................25, 26, 27

*Lightfoot v. Union Carbide Corp.*,
   110 F.3d 898 (2d Cir. 1997)......................................................................................................3

*Lindow v. United States*,
   738 F.2d 1057 (9th Cir. 1984) ................................................................................................27

*Lopez v. Corporacion Azucarera de P.R.*,
   938 F.2d 1510 (1st Cir. 1991)..................................................................................................27

*Martinez v. Food City, Inc.*,
   658 F.2d 369 (5th Cir. 1981)...................................................................................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)...................................................................................................................2

589657_1

Page

*McGrath v. Central Masonry Corp.*,
   No. 06-cv-00224-CMA-CBS, 2009 WL 3158131
   (D. Colo. Sept. 29, 2009) ...........................................................................................................17

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988)............................................................................................................27, 28

*Melini v. 71st Lexington Corp.*,
   No. 07 Civ. 701(JCF), 2009 WL 413608
   (S.D.N.Y. Feb. 13, 2009) ...........................................................................................................4

*Mitchell v. King Packing Co.*,
   350 U.S. 260 (1956).................................................................................................................25

*Moon v. Kwon*,
   248 F. Supp. 2d 201 (S.D.N.Y. 2002)........................................................................................8

*Morales v. Zondo, Inc.*,
   No. 00 Civ. 3494 AGS, 2001 WL 64745
   (S.D.N.Y. Jan. 25, 2001)...........................................................................................................3

*Reed v. Mobile County Sch. Sys.*,
   246 F. Supp. 2d 1232 (S.D. Ala. 2003).....................................................................................3

*Reich v. New York City Transit Auth.*,
   45 F.3d 646 (2d Cir. 1995)..................................................................................................25, 27

*Reich v. S. New Eng. Telecomms. Corp.*,
   121 F. 3d 58 (2d Cir. 1997).......................................................................................................17

*Reich v. Stewart*,
   No. 4:CV 94-3307, 1996 WL 325891
   (D. Neb. Mar. 7, 1996)..............................................................................................................8

*Russell v. Ill. Bell Tel. Co., Inc.*,
   No. 08 C 1871, 2010 WL 2595234
   (N.D. Ill. June 28, 2010) ...........................................................................................................4

*Saunders v. City of N.Y.*,
   594 F. Supp. 2d 346 (S.D.N.Y. 2008)......................................................................................28

*SEC v. Thrasher*,
   152 F. Supp. 2d 291 (S.D.N.Y. 2001)........................................................................................4

589657_1

Page

*Seever v. Carrols Corp.*,
   528 F. Supp. 2d 159 (W.D.N.Y. 2007) ...................................................................17

*Shao v. A-One Medical Services, Inc.*,
   346 F.3d 908 (9th Cir. 2003) ...................................................................23, 28

*Singh v. City of New York*,
   524 F. 3d 361 (2d Cir. 2008)...................................................................26, 27

*Skelton v. Am. Intercontinental Univ. Online*,
   382 F. Supp. 2d 1068 (N.D. Ill. 2005) ...................................................................17

*Solis v. Best Miracle Corp.*,
   709 F. Supp. 2d 843 (C.D. Cal. 2010) ...................................................................8

*Steiner v. Mitchell*,
   350 U.S. 247 (1956)...................................................................24

*Stillman v. Staples, Inc.*,
   No. 07-849(KSH), 2009 WL 1437817
   (D.N.J. May 15, 2009) ...................................................................3

*Summa v. Hofstra Univ.*,
   715 F. Supp. 2d 378 (E.D.N.Y. 2010) ...................................................................28

*Torres v. Gristede's Operating Corp.*,
   628 F. Supp. 2d 447 (S.D.N.Y. 2008)...................................................................28

*Wessling v. Carroll Gas Co.*,
   266 F. Supp. 795 (N.D. Iowa 1967)...................................................................8

*Wirtz v. Miss. Publishers Corp.*,
   364 F. 2d 603 (5th Cir. 1966) ...................................................................8

## STATUTES, RULES AND REGULATIONS

29 U.S.C.
   §203(g)...................................................................3
   §207...................................................................3
   §207(a)(1) ...................................................................3
   §211(c)...................................................................16
   §255(a)...................................................................28

589657_1

**Page**

Federal Rules of Civil Procedure
Rule 30(b)(6) ..........................................................................................................6, 7
Rule 56 ....................................................................................................................2
Rule 56(e)(2) ...........................................................................................................3

Local Rule
Rule 56.1 ...........................................................................................................5, 19

29 C.F.R.
§516.5(a) .................................................................................................................8
§516.6(a)(1) .............................................................................................................8
§516.69(a)(1) .........................................................................................................13
§785.11 ..................................................................................................................22
§785.12 ..................................................................................................................22
§785.13 ..................................................................................................................17

589657_1

## I.    INTRODUCTION

AT&T Mobility LLC ("AT&T" or "Defendant") urges summary judgment against all opt-in plaintiffs because its timekeeping system purportedly satisfies Fair Labor Standards Act ("FLSA") requirements and plaintiffs cannot prove AT&T had a policy or practice of denying off-the-clock work. *See* AT&T's Memorandum in Support of Summary Judgment ("Sum. Mem.") at 3-13. These issues, standing alone, cannot support class-wide summary judgment, as they do not ***resolve*** AT&T's liability for unpaid overtime. Whether AT&T's timekeeping system could accurately record all hours worked and whether it had policies and practices promoting off-the-clock work are relevant to proving the existence of unpaid overtime and AT&T's knowledge of it. Neither, however, is a necessary element of plaintiffs' FLSA claims. And even if these disputed factual issues could be resolved as a matter of law, they do nothing to resolve the critical issue in this case, which is ***not*** whether the system, in theory, could capture plaintiffs' time but whether, in fact, it did actually capture all time worked, thereby requiring AT&T to pay plaintiffs proper overtime. The undisputed evidence demonstrates that the answer to these issues is a resounding "no."

AT&T also contends plaintiffs cannot prove the amount of their uncompensated work because there are no records and plaintiffs' memories are "fuzzy." Sum. Mem. at 14-16. This baseless contention is easily refuted by competent evidence and testimony meeting – indeed, exceeding – plaintiffs' burden for proof for damages. AT&T's contrary position amounts to the wholesale rejection of any FLSA claim for off-the-clock overtime because would-be plaintiffs do not keep an independent record of such work. But it is AT&T's responsibility under the FLSA to keep complete and accurate records, and for this reason AT&T's blame-the-victim strategy was long ago rejected by the U.S. Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). AT&T acknowledges, as it must, that under *Mt. Clemens* plaintiffs' testimony can be sufficient proof

- 1 -

of damages, but it contends *Mt. Clemens* does not apply because its timekeeping system ("MyTime")

kept an accurate record of all hours worked. To the contrary, as discussed below, the evidence

overwhelmingly shows that MyTime, as well as the policies and practices surrounding it, functioned

to institutionalize off-the-clock work by erecting multiple barriers that frustrated and blocked the

recording of all hours worked. Indeed, AT&T cannot dispute that it failed to pay plaintiffs for all of

the time they worked.

Finally, AT&T avers it was ignorant of uncompensated off-the-clock work. Sum. Mem. at

16-19. But FLSA liability does not require actual knowledge. It is sufficient if the employer knew

or should have known its employees were working off the clock without proper compensation.

Here, the evidence goes beyond proof of mere knowledge to willfulness, resulting in a three-year

statute of limitations. But even if unpaid overtime was not done with willfulness, an FLSA claim

under the two-year statute of limitations still exists. At bottom, this disputed fact issue, like the

others AT&T raises, will be resolved by the trier of fact.

## II.     AT&T Cannot Obtain Summary Judgment Solely on Assertions of Legality and Policy Statements that Conflict with Plaintiffs' Substantial Evidence

On this motion, it is the ***elements*** of plaintiffs' FLSA claims that should be the focus and

establish the true factual issues to be assessed.[1] The FLSA requires employers to pay overtime for

_____

[1]     A party is entitled to summary judgment only when there is "no genuine issue as to any material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). On a summary judgment motion, the court views the record favorably to the nonmoving party and draws all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The role of a court in ruling "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Assuming such a showing is made, the

- 2 -

"employment in excess of [forty hours per week] at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. §207(a)(1). An employer is also responsible for compensating an employee for any work it suffers or permits the employee to work. 29 U.S.C. §203(g); *see Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008) (employer liable for failing to compensate employees for overtime work the employer suffered or permitted). To establish an FLSA claim, a plaintiff need only prove that: (1) he was an employee eligible for overtime, that is, not exempt under the FLSA; and (2) he actually worked overtime hours for which he was not compensated. 29 U.S.C. §207; *Morales v. Zondo, Inc.*, No. 00 Civ. 3494 AGS, 2001 WL 64745, at *3 (S.D.N.Y. Jan. 25, 2001).[2] Plaintiffs' evidence thoroughly demonstrates these elements.

---

nonmoving party must present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A genuine issue of material fact exists if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson*, 477 U.S. at 258 (1986). In essence, summary judgment is designed to flush out those cases that are predestined to result in a directed verdict. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).

Unless otherwise noted, all emphasis is added and citations are omitted.

[2]     Contrary to Defendant's assertion, there is no ***requirement*** that plaintiffs must prove that AT&T had a particular policy or practice in order to prove liability under the FLSA. AT&T cites to no controlling authority for this proposition. Instead, AT&T cites a case where plaintiffs simply argued that a pattern or practice existed at the conditional certification stage (*Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1232, 1233 n.9 (S.D. Ala. 2003) ("plaintiffs employ the term 'pattern or practice' as it is used in 'employment cases in the civil rights area'")), and a case where the court merely cited case law referencing a discriminating practice in conjunction with a disparate impact age claim (*Holowecki v. Fed. Express Corp.*, 644 F. Supp. 2d 338, 358 (S.D.N.Y. 2009)). One cited case that actually discusses "a pattern or practice," *Stillman v. Staples, Inc.*, No. 07-849(KSH), 2009 WL 1437817 (D.N.J. May 15, 2009), clarifies that the corresponding burden of proof on summary judgment is "'not an onerous one'" and is met through representative testimony the opt-ins performed work for which they were not properly compensated and sufficient evidence of the amount and extent of such work, as a matter of just and reasonable inference. *Id.* at *18.

589657_1

AT&T attempts to counter this proof by averring its MyTime timekeeping system is "lawful." But the "legality" of MyTime is not a proper matter for summary determination as such a finding would not resolve any claim or defense. The "legality" of MyTime's "design and implementation" is not a determinative element to any of plaintiffs' claims. That MyTime, in some contrived, theoretical way, *could* accurately capture plaintiffs' off-the-clock work is not *undisputed proof* that it actually did.[3]

To the extent it is relevant, the "legality" of MyTime as used and implemented by AT&T is a disputed issue of fact, and substantial evidence indicates it did not keep an accurate record of plaintiffs' hours worked. In this regard, MyTime's purported "lawfulness" is neither demonstrated nor amplified by a policy that "all overtime worked by nonexempt employees must be paid regardless of whether the work was approved," Sum. Mem. at 7. Such policy statements do not protect employers when their established practices are to the contrary. *Russell v. Ill. Bell Tel. Co., Inc.*, No. 08 C 1871, 2010 WL 2595234, at *9 (N.D. Ill. June 28, 2010) (otherwise "lawful . . . policies will not shield [an employer] from liability if [the employees] can show other company-wide practices that may have been contrary to those policies and violated the FLSA").

---

[3]     In *Melini v. 71st Lexington Corp.*, No. 07 Civ. 701(JCF), 2009 WL 413608 (S.D.N.Y. Feb. 13, 2009), an injured plaintiff sought summary adjudication on the question of whether a ramp was constructed "unlawfully" under the New York City Building Code. *Id.* at *4.  Noting this question would not dispose of liability, the court concluded: "This is precisely the type of incomplete summary judgment motion that is not authorized by the Rules and is frowned upon by the courts." *Id.*; *see SEC v. Thrasher*, 152 F. Supp. 2d 291, 295 (S.D.N.Y. 2001) (summary judgment should not be used as a "vehicle for fragmented adjudication of non-determinative issues"); *Hartford Fire Ins. Co. v. Goodman Mfg. Co., L.P.*, No. 09 Civ. 10090(JSR), 2010 WL 326011 (S.D.N.Y. Aug. 4, 2010) (summarily adjudicated facts should aid, not confuse, the deliberative process).

589657_1

**III.    AT&T Required Plaintiffs to Perform Job Functions Outside MyTime
         Where Their Time Could Not Be Directly Recorded**

There is no dispute that important job tasks, such as opening and closing stores and

responding to email, text messages and phone calls while outside the store, were performed when

plaintiffs could not physically log into MyTime. Nor is there any dispute that plaintiffs were not

paid for this work time unless a manual adjustment was later made to the MyTime record. Similarly,

AT&T does not challenge that opening and closing its stores was a regular job duty of ASMs and

RSCs or that it was not regularly or automatically adjusting the MyTime records for off-the-clock

time involved in the opening and closing procedures.

AT&T gives all its RSCs and ASMs company cell phones and Blackberries ("COU" or COU

devices") to assist them in making and completing sales. Kroub Decl., Ex. 87 (Robinson) 110:21-

111:9; *see also* Response of Plaintiffs to Defendants' Local Rule 56.1 Statement of Undisputed

Material Facts Supporting Defendants' Motion for Summary Judgment ("RSF") at ¶16(g). There is

no dispute RSCs and ASMs had permission to use their COUs off company premises (Robinson

Depo. at 114:5-8).

Moreover, AT&T also provided the RSCs and ASMs with business cards that specifically

listed their COU numbers as a contact number. *See* Declaration of Edward Y. Kroub ("Kroub

Decl.") filed herewith, Ex. 87 (Robinson) 106:13-23; RSF at ¶16(f). AT&T has avoided studying

the effect of distributing these business cards to customers (*Id*. 107:20-25), but it is inconceivable

that AT&T did not know – and intend – that putting employee phone numbers on their business

cards would result in sales and customer service calls outside the typical business day. RSF at

§16(e).

The COUs were provided so that employees could, at AT&T's insistence, be responsive to

customer phone calls, regardless of whether the calls occurred when the employee was in or out of

- 5 -

the store.  AT&T uses the term █████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

Indeed, AT&T's Code of Business Conduct ("COBC") reflects a policy statement ██████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

████████████████████████████████████████████ *See* Declaration of

Robert M. Rothman ("Rothman Decl."), filed herewith.  Ex 59 at MOBILITY06191438.  AT&T

acknowledges that this policy applies ██████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.*  AT&T's Rule

30(b)(6) representative regarding FLSA compliance efforts admitted ████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

---------

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

- 6 -

█████████████████████████████████████████████████████████

Consistent with the above polices and practices, the 29 randomly selected opt-in plaintiffs testified uniformly that they would receive text messages, emails and phone calls from store managers while off the clock.[5]  Given the breadth of this conduct, plaintiffs' managers had specific knowledge that plaintiffs were performing work off the clock.  Indeed, the managers themselves were creating work for plaintiffs to perform while punched out of MyTime.

As AT&T's corporate designee readily acknowledged, ████████████████████

█████████████████████████████████████████████████████████

## IV.   AT&T Failed to Keep an Accurate Record of All Hours Worked

AT&T seeks summary judgment by averring its MyTime system purportedly "satisfies record keeping requirements of the FLSA."  Nonsense.  The timekeeping system that AT&T provided to employees for use in reporting their off-the-clock work functioned in a way that frustrated, hindered and blocked the reporting of off-the-clock work.  Beyond the policies, practices

---

[5]     *E.g.*, Rothman Decl., Ex. 19 (Keyser) 18:6-8 (received texts from managers off the clock); Ex. 8 (Crockett) 52:24-53:5; 27:17-22 (managers would call and text her on a daily basis.); Ex. 12 (Gutierrez) 35:17-36-7 (received text messages from managers off the clock and when she did not respond once she was told she needed to respond to every text that she received from them); Ex. 2 (D. Bennett) 53:15-21; 68:15-20 (manager would send him work-related emails and texts off the clock.); Ex. 13 (Harrell) 20:24-21:2; 43:4-43:25; 72:3-72:11 (received emails, text messages and phone calls from managers off the clock); Ex. 32 (Timper) 10:15-19; 30:7-9; 33:25-34:4; 46:22-25 (received emails off the clock from managers and manager-sent texts on a daily basis); Ex. 35 (Walsh) 11:12-12:23; 42:6-9; 55:9-15; 59:13-16 (manager would call on COU device on almost a daily basis; received work-related emails from managers); *see also*  RSF at ¶6(i).

and procedures that promoted and caused unpaid off-the-clock work, AT&T failed to create and maintain the hours worked record required by 29 C.F.R. §516.5(a) (requiring maintain for three years "all payroll or other records containing the employee information") and 29 C.F.R. §516.6(a)(1) (requiring maintain for two years "*all basic time and earning cards or sheets on which are entered the daily starting and stopping time of individual employees*").   AT&T has no record of the "starting and stopping time of individual employees" for their off-the-clock work and it provides no system for capturing it.   Whether MyTime has the *capacity* to capture start and stop times of work performed by hourly employees is irrelevant.   The true issues of this notion is that due to AT&Ts policies and procedures the system failed to record plaintiffs' off-the-clock work.[6]   In all events, AT&T cannot be excused from its duty to ensure complete and accurate time records. *See Wessling*, 266 F. Supp. at 802 (rejecting defendant's argument that it was plaintiffs' responsibility to complete

---

[6]      *Solis v. Best Miracle Corp.,* 709 F. Supp. 2d 843, 851-53 (C.D. Cal. 2010) (*Mt. Clemens* burden-shifting applies where timecards and payroll records did not reflect all hours employees testified they worked); *Reich v. Stewart*, No. 4:CV 94-3307, 1996 WL 325891, at *7 (D. Neb. Mar. 7, 1996) (concluding that there was "clearly" a violation of the FLSA's recordkeeping provision where defendant failed to keep records of the daily and weekly hours that plaintiffs worked); *See Moon v. Kwon*, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (hotel log book, which did not record every instance in which hotel worker responded to emergency calls, came "nowhere close to satisfying the detailed recordkeeping requirements of FLSA and its implementing regulations"); *Wirtz v. Miss. Publishers Corp.*, 364 F. 2d 603, 607 (5th Cir. 1966) (employer who depended upon employees to keep statutory records of time and overtime violated FLSA record-keeping requirements); *Hodgson v. Katz & Besthoff, #38, Inc.*, 365 F. Supp. 1193, 1198-99 (W.D. La. 1973) (two year record-keeping requirement applied to time cards that included employees' beginning and ending times). As explained in *Mt. Clemens*: "[I]t is the employer who has the duty under §11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed." 328 U.S. at 687. This duty to keep proper hours-worked records includes "after hours work." *E.g., Wessling v. Carroll Gas Co.*, 266 F. Supp. 795, 802 (N.D. Iowa 1967).

- 8 -

time slips on the ground that the "defendant had the duty to keep proper records of the plaintiffs' after hours work under Section 11(c) of the Act").

### A. MyTime Was Configured to Prevent Plaintiffs from Recording All Hours Worked

AT&T does not, and cannot, dispute that its nationwide policies and practices regularly required employees to perform many tasks during periods *when they were not permitted to log into MyTime and such work hours were not contemporaneously recorded*.  It is also undisputed that plaintiffs were only paid for time reported in MyTime, which could only be accessed by plaintiffs while they were at the retail store location.[7]  RSF at¶2(a).  MyTime would not reflect, hence AT&T would not pay, for off-the-clock work performed outside of the store or for work involved in opening and closing the store.  While managers could override MyTime to record ASM's and RSC's off-the-clock work performed, there is substantial evidence showing that they failed to do so.

### B. Managers Failed to Make Adjustments for Time Worked Off the Clock

The adduced evidence shows that AT&T managers consistently refused to make adjustments to the MyTime record when employees reported their off-the-clock work.[8]  Managers also threatened

---

[7]     Although Defendant contends that some plaintiffs could adjust their own time using company-issued laptop computers (Sup. Mem. at 25), such was not the case.  Of the 29 randomly selected opt-in plaintiffs, only one testified to having access to a laptop and as soon as AT&T realized that he was making adjustments to his own time for all of the off-the-clock work that he sought to be paid for, his adjustment privilege was taken away.  Ex. 2 (D. Bennett) 62:8-64:2.

[8]     *E.g.*, Ex. 12 (Gutierrez) 14:15-15:5 (told by manager she would not get paid for sending and receiving messages off the clock); Ex. 19 (Keyser). at 10:9-11:13; 72:23-73:24; 25:2-16 (requested to be paid for off-the-clock work but her manager made a joke about it or otherwise ignored her each time she requested an adjustment); Ex. 8 (Crockett) 41:4-25 (told she would not get paid for responding to messages off the clock); Ex. 2 (D. Bennett) 28:11-33:17; 39:6-18 (requested adjustments for off-the-clock work but managers repeatedly refused to make them); Ex. 35 (Walsh) 75:20-79:3; 90:7-91:11; 104:23-105:7 (made repeated requests to managers to be paid for off-the-

- 9 -

discipline or other adverse employment consequences for requesting adjustments, thus creating an

environment where plaintiffs feared reporting off-the-clock time.[9]

Discouraged, disheartened and frankly fearful, plaintiffs eventually stopped asking to be paid

for off-the-clock work. *See* RSF at ¶7(c). *See* Ex. 19 (Keyser) 31:6-31:11; 44:12-45:4; 53:14-54:7

(after requested adjustments were refused several times, including requests for opening and closing

tasks and interrupted meal breaks, plaintiff stopped asking for adjustments to avoid being deemed a

"pest" and because she needed the job); Ex. 8 (Crockett) 42:23-44:17; 45:6-21; 79:20-80:3; 84:12-

18; 91:1-92:7(did not continue asking to be paid for off the clock work, including for reviewing

product information and participating in sales promotions, because she was already told that it would

not be paid and was afraid to report it); Ex. 2 (D. Bennett) 33:13-17; 35:3-11; 113:17-23; 80:8-

80:15; (did not continue to ask for adjustments after multiple requests were ignored); *see also* RSF at

¶7(c)-(d).

In addition to the practice of refusing to permit adjustments to the record when asked,

plaintiffs' testimony also explains that often managers were physically present in the store when

plaintiffs were working while punched out of MyTime. Thus, plaintiffs have testified that managers

actually witnessed them working off the clock after they had punched out or when they were called

back during a meal break to service customers while not punched into MyTime.[10]

---

clock work, including for time spent opening the store and for interrupted lunch breaks, but requests
were consistently denied). *See also* RSF at ¶7(a).

[9]     *See, e.g.*, Ex. 8 (Crockett) 16:12-17:8 (managers told her that if she did not answer her calls
she would be "written up" and the time spent would be unpaid); *see also* RSF at ¶7(d).

[10]    *See* Rothman Decl., Ex. 19 (Keyser) 52:3-22 (manager would call her onto the sales floor to
assist customers during lunch breaks); *see also* Kroub Decl., Ex. 70 (Crockett) 89:24-90:25 (was
required to help customers during her lunch break); *id.*, Ex. 64 (D. Bennett) 110:11-22; 111:21-25

Plaintiffs also testified that managers were present when they opened and closed AT&T's retail stores, all while not clocked into MyTime. *See, e.g.*, Ex. 6 (Carrega) 75:12-77:6 (manager would unlock the door for him to perform his opening tasks); Ex. 8 (Crockett) 66:14-67:20 (manager was present to unlock door in order for her to perform opening duties).

### C.    AT&T's Policies Resulted in Overtime Not Being Recorded

AT&T had a strict policy ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

███████████████████

The off-the-clock tasks at issue here generally were not and could not be predetermined or preapproved. As a result, AT&T's disciplinary policy placed hourly employees in the untenable position of having to admit to working unapproved overtime and ███████████████████ ██████████████████████ if they reported off-the-clock work that was a normal and expected – indeed, unavoidable – part of the job.

---

(would be summoned to help customers during lunch when customers entered the store and did not clock back in during lunch because it was second nature to help the customer); *id.*, Ex. 75 (Harrell) 105:22-106:6 (lunch was interrupted for helping customers) *id.*, Ex. 94 (Timper) 74:11-25 (answered questions during lunch because she needed to help and it was her job); *id.*, Ex. 97 (Walsh) 104:15-19 (did not ignore customers during lunch because he did not want to be rude and wanted to do his job).

589657_1

Even AT&T's COBC, which AT&T highlights its policy ███████████████
█████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

While AT&T contends that its policy of ██████████████████████████ does not

apply to the work at issue here, AT&T has never informed employees of this purported exception to

its disciplinary policy in any formal way.  Kroub Decl., Ex. 87 (Robinson) 161:12-162:7.  In

addition, AT&T has never surveyed or questioned hourly employees anonymously to determine

whether they did not report off-the clock work due to ████████████████████████

██████████████████████

Another such policy – closely related to the ████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Plaintiffs were trapped in conflicting sets of policies and practices, all working to discourage reporting off-the-clock work. On the one hand, they were required to work off the clock performing tasks outside the store that were chiefly unanticipated and not amenable to preapproval. But on the other hand, ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████ These policies and practices created a culture where RSCs and ASMs rarely sought adjustments to the MyTime record and managers rarely if ever adjusted MyTime notwithstanding the off-the clock tasks occurring in the store or directly resulting from their own contacts via phone calls, text messages or emails. How these policies impacted the recording and payment of overtime is a factual issues on which the parties disagree.

### D. Although It Could Have Done So, AT&T Did Not Provide Employees with an Appropriate Means of Having Off-the Clock Overtime Recorded

AT&T failed to provide employees with any mechanism, procedure or vehicle that would give them a reliable or effective way of reporting time they spent working off the clock. AT&T provides no written form, timesheet or other vehicle that would assist employees in reporting their off-the-clock work. *See* RSF at ¶¶2(a) and 16(h).

AT&T wants to suggest that its failure to provide a standardized vehicle or written method for reporting such time somehow adds "flexibility" to its timekeeping system. But, the lack of any required procedures is an impediment to time reporting and means AT&T fails to maintain time records that show the "daily starting and stopping time" for the off-the-clock work. *See* 29 C.F.R. §516.69(a)(1). Under AT&T's ill-defined procedure and practice, even if an employee were to submit an email containing the start and stop time for off-the-clock work, and even if the manager adjusted MyTime (which is contrary to plaintiffs' testimony regarding managers' refusal to make

- 13 -

such adjustments) there still would be nothing in MyTime recording actual start and stop times, the day on which the work occurred or any information regarding the purpose of the adjustment. The only written record identifying such information, assuming an email was used to convey the information, would be deleted within 90 days under AT&T email destruction policy.

AT&T's timekeeping expert, Ms. Lisa Disselkamp, contends that blocking access to MyTime is appropriate ███████████████████████████████████████████████████ ███████████████████████████████████ However, such a cynical view of employees is unfounded and untested here, and in any case, provides no justification for AT&T's flawed system.[11] To allow employees to make a written record of start-and-stop times for off-the-clock work does not mean AT&T has to accept and cannot challenge the reported time. ██████████████████

███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████

(Kroub Decl., Ex. 111). Pursuant to this review process, hours recorded in MyTime can be – and frequently are – adjusted downward by managers before the time is submitted to payroll.[12]

Second, Disselkamp's position condones and approves the failure to take affirmative steps to track accurately the time employees spend performing regularly occurring work and endorses barriers to the easy reporting of hours worked based solely on an unsubstantiated fear that employees

---

[11]   All of Ms. Disselkamp's opinions are based on the *capacity* of MyTime to record and process worktime. *See, e.g.*, Kroub Decl., Ex. 71 (Disselkamp) 102:15-103:20; 112:8-113:17. She did not investigate whether, as used, MyTime did in fact accurately and completely record plaintiffs' work time. That assessment, she confirmed, was beyond the scope of her assignment.

[12]   On those workdays Dr. Paul White, AT&T's expert evaluating the time records deems most closely representative of typical workdays (so-call even-punch days), the most common edit is subtraction of a half hour of work time.

- 14 -

will overreport their time.  Instead of confronting any overreporting problem, AT&T clings to a timekeeping process that fails to provide employees with any reporting method so as to capture daily start-and-stop times for off-the-clock work, in violation of the FLSA to keep such records.

Third, AT&T has many alternatives for policing and stopping potential overreporting of work time that do not involve violating FLSA timekeeping requirements.  For instance, AT&T could conduct a survey or study to determine the time typically spent performing off-the-clock work in each of the work categories at issue and then use such data as a bench mark to gauge the reasonableness of reported time. ████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

For all of its purported facility in capturing work time, MyTime has a glaring and fatal flaw that AT&T avoids discussing:  MyTime cannot reveal or explain why any time edit was made or to what work those edits relate.  Because plaintiffs working off the clock, cannot contemporaneously record their own work time, such edits must be made by store managers or their authorized designees in order to add plaintiffs' work time to the record.  But MyTime, as AT&T has it configured, does not permit those editing the time record to explain why or for what purpose the edit is being made. Thus in none of the nearly 1.5 million MyTime workday time records produced in this case can AT&T point to any edit that added time for plaintiffs' off-the-clock work.

Dr. White, who analyzed all of the MyTime data, repeatedly confirmed that he could not identify any time edit assuredly related to off-the-clock work.  *See* RSF at ¶4(b). The absence of a

- 15 -

so-called "reason code" for why an edit was made precludes MyTime from providing any evidence that off-the-clock work was either recorded or paid. *Id.* And notwithstanding the importance of such a reason code – presumably as much to AT&T as to its employees – AT&T did nothing to reconfigure MyTime to permit such entries, although such reconfiguration was unquestionably available, as Ms. Disselkamp confirmed. *Id.*

The only other possible source of information about the intended scope of a time edit was the request employees made to store managers to adjust their time records. But there was no form or prescribed way to make that request and, most important, there was no policy or practice to record or maintain the request itself. *See* Kroub Decl., Ex. 98 (White) 94:1-13; Ex. 67 (Bruce) 178:20-179:10. Dr. White and AT&T's Director of the MyTime Audits, Craig Bruce, both confirmed that that information would be useful in deciphering the MyTime edits, but it is not available and will not be so – unless AT&T changes its policies and practices. Ex. 98 (White) 86:13-87:5; Ex. 67 (Bruce) 180:6-25.

**V.    Substantial Evidence Shows AT&T's FLSA Violations of Timekeeping Requirements Resulted in Its Failure to Pay Overtime to Plaintiffs**

**A.    Plaintiffs' Evidence of Unpaid Overtime Meets Their Burden of Proof Under Mt. Clemens**

In *Mt. Clemens*, the Supreme Court held that if an employer fails to comply with the FLSA's record keeping requirements (29 U.S.C. §211(c)) or the employer's records cannot be trusted, the plaintiff need only: (1) show "that he has in fact performed work for which he was improperly compensated;" and (2) produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. To meet their *Mt. Clemens* burden, plaintiffs "need not present testimony from each underpaid employee; rather, it is well-established that [plaintiffs] may present the testimony of a representative sample of employees as

- 16 -

part of his proof of the prima facie case under the FLSA." *Reich v. S. New Eng. Telecomms. Corp.*, 121 F. 3d 58, 67 (2d Cir. 1997). "'The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Id*. "'If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.'" *Id*.

AT&T offers *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159 (W.D.N.Y. 2007) to argue plaintiffs cannot satisfy their *Mt. Clemens* burden as a matter of law. *Seever*, however, is factually distinguishable for many reasons, particularly because, unlike here, plaintiffs there could enter their time *directly* into the payroll system and were encouraged to do so. In contrast, AT&T admits that only store managers or their designees were authorized to input off-the-clock time. Moreover, "[c]ritical to the analysis in *Seever* was that there was no genuine dispute that the inaccuracies in the time records were '*solely due to plaintiffs' deliberate failure to accurately record the time they worked*.'" *Brennan v. Qwest Commc'ns Int'l, Inc.*, No. 07-2024 ADM/JSM, 2010 WL 2901002, at *8 (D. Minn. July 20, 2010) (emphasis in original). Here, however and as discussed above, there is a genuine dispute about effect of AT&T's timekeeping policies and practices in ensuring all work time was recorded.[13]

---

[13]     "The mere promulgation of a rule against [off-the-clock] work is not enough. "Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. §785.13; *see also McGrath v. Central Masonry Corp.*, No. 06-cv-00224-CMA-CBS, 2009 WL 3158131, at *6 (D. Colo. Sept. 29, 2009) ("[t]he burden to maintain accurate records falls on the employer regardless of whether the employee is responsible for recording his own hours on a time sheet"); *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1071-72 (N.D. Ill. 2005) ("The FLSA makes clear that employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by employees.").

Plaintiffs can amply demonstrate AT&T failed to maintain complete and accurate records of plaintiffs' work time in violation of the FLSA. Accordingly, the *Mt. Clemens* standard clearly applies.

**B.      Representative Testimony from 29 Plaintiffs Shows AT&T's Policies, Practices and Timekeeping System Resulted in Substantial Unpaid Overtime**

Randomly selected opt-in plaintiffs have testified uniformly that they and their coworkers routinely failed to receive overtime compensation for a number of tasks regularly performed off the clock, including: (1) reviewing and responding to emails and text messages; (2) working through meal breaks; (3) opening and closing AT&T's retail stores; (4) participating in conference calls; (5) reviewing product information; (6) engaging in sales promotions; (7) servicing customers outside of the retail store; and (8) participating in a variety of company-related activities outside of normal business hours.

Of the 29 selected opt-in plaintiffs, all but two testified that they responded to emails and/or text messages off the clock, 25 testified that they participated in customer service-related activities or otherwise fielded work-related phone calls while punched out of MyTime, and 24 testified that they were not properly compensated for opening and closing AT&T's retail stores. RSF at ¶1. These opt-in plaintiffs also overwhelmingly testified that they worked off the clock while working through meal breaks, participating in conference calls, reviewing product information, and undertaking other company-related activities. *Id.* Moreover, these opt-in plaintiffs submitted Court-mandated questionnaires, verified under oath, that attested to working off the clock and identified the specific job activities undertaken, including the frequency of and approximate time spent doing this work. Rothman Decl. Ex. 37.

- 18 -

The evidence described above and submitted in plaintiffs' Rule 56.1 Statement is more than sufficient to permit a reasonable factfinder to conclude that plaintiffs have demonstrated the amount and extent of their off-the-clock work through just and reasonable inference. *See, e.g., Farmer v. DirectSat USA, LLC*, No. 08 C 3962, 2010 WL 3927640, at *17 (N.D. Ill. Oct. 4, 2010) (declarations from six plaintiffs averring to the total hours they worked per week, and from five regarding the approximate number of off-the-clock hours worked weekly, sufficient to meet *Mt. Clemens* standard).[14]

### C.   AT&T's Internal Monitoring Suggests Off-the-Clock Work in the Few Areas Where AT&T Can Monitor

AT&T also conducted certain time record audits that █████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

---

[14]   AT&T argues that plaintiffs' claims fail because they did not complain enough or to enough people about their off-the-clock work. Sum. Mem. at 15. This blame-the-victim strategy should not be countenanced. It is AT&T that is responsible for paying plaintiffs properly. The fact that some plaintiffs did not complain to Human Resources, the ethics hotline, union representatives or regional managers does not serve, as a matter of law, to bar plaintiffs' claims. *See England v. Advance Stores Co. Inc.*, 263 F.R.D. 423, 451 (W.D. Ky. 2009) ("The fact [the plaintiff] did not complain higher up the chain, or that he did not go behind and manually correct the time records . . . are circumstances that do not work as a matter of law to deny [his] right to recovery . . . ."); *Brennan*, 2010 WL 2901002, at *9-*10 (same). AT&T conveniently ignores that many plaintiffs did in fact attempt to make such complaints, but were met with resistance or dissuaded from making or following-up with their inquiries. *See* Rothman Decl., Ex. 35 (Walsh) 92:9-25 (complained to ARSM because manager failed to adjust time, but told that it was a few minutes here and there and he should step up or it was too late to fix it); Ex. 12 (Gutierrez) 64:18-65-16 (did not complain to anyone other than manager because she was scared she would lose key holder responsibilities and shift preferences). Moreover, AT&T cannot reasonably rely on plaintiffs' reticence regarding off-the-clock work where AT&T knew or certainly should have known plaintiffs were working off the clock. At the very least, these circumstances create genuine fact issues for the factfinder to determine.

- 19 -



Also, managers were required to

### D.    MyTime Records Show a Systematic Failure to Adjust Timekeeping Records so as to Record and Pay for All Hours Worked

Given the frequency of off-the-clock work plaintiffs reported through their questionnaires and testimony, MyTime should show numerous management edits, on a nearly daily basis, to capture the off-the-clock work. The MyTime record, however, is unquestionably to the contrary. Dr. Bernard R. Siskin, plaintiffs' statistical analyst,



- 20 -



Not surprisingly, at least to plaintiffs, Dr. White's analysis revealed <span>████</span>



In some instances, managers even reduced the time plaintiffs were logged into MyTime by manually overriding the system and entering a 30-minute meal break when the employee actually worked through the meal.  *See* RSF at ¶11(b).

### E.    COU Records Show Off-the-Clock Work in the Few Instances Where AT&T Has Bothered to Look

AT&T's COU records, when analyzed by AT&T's own expert, demonstrate that plaintiffs used their COU devices to perform off-the-clock work for which they were not paid. ████

589657_1

████████████████████████████████████████

██████████████████████████ AT&T cannot escape FLSA liability by burying its

head in the sand. *See Martinez v. Food City, Inc.,* 658 F.2d 369, 375 (5th Cir. 1981).

## VI.    Substantial Evidence Shows AT&T Knew Its Policies, Practices and Systems Denied Overtime for Off-the-Clock Work

Work performed off-site or off-the-clock must be counted as time worked "[i]f the employer

knows or has reason to believe that work is being performed." 29 C.F.R. §785.12; *see also* 29

C.F.R. §785.11 (If the "employer knows or has reason to believe that [the employee] is continuing to

work . . . the time is working time."); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d. Cir.

1998). Moreover, once an employer knows or has reason to know that an employee is working

overtime, it cannot deny compensation even where the employee fails to claim overtime hours. *Id.*;

*see also Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d. Cir. 1959); Britain Depo. at

70:23-71:9 (even if the employee did not report the time, the manager was obligated to pay for work

if they knew about it). An employer need not have actual knowledge of such off-site work;

constructive knowledge will suffice. *Holzapfel*, 145 F. 3d at 524.

AT&T's cherry-picked testimony of instances where plaintiffs might not have reported off-

the-clock work cannot defeat plaintiffs' claims as a matter of law. AT&T had actual and

constructive knowledge that plaintiffs were working off the clock for a number of reasons. The

randomly selected plaintiffs consistently testified that management resisted or refused plaintiffs'

attempts to report off-the-clock work, creating a chilling effect on plaintiffs' attempts to report such

work. Many faced discipline for reporting such work or were otherwise threatened with adverse

employment consequences. Others were not even aware that certain categories of off-the-clock

- 22 -

work were compensable having been discouraged from considering minutes here or there as work. Further, plaintiffs' managers were often present when plaintiffs worked off the clock or otherwise created such work by calling, texting and emailing plaintiffs while they were punched out of MyTime.[15] At bottom, however, AT&T's knowledge is a fact that the parties very much dispute. *See Shao v. A-One Medical Services, Inc.*, 346 F.3d 908, 919 (9th Cir. 2003) (prior FLSA violations in combination with testimony of former employees prove reckless disregard for purposes of willfulness).

## VII. Recently AT&T Has Internally Acknowledged Its Off-the-Clock Work Problem, but Has Still Failed to Fix It

On or about January 16, 2009 Paul Roth, President or AT&T's Retail Sales & Service sent a company-wide email setting forth



---

[15]     AT&T also argues that plaintiffs' "fuzzy memories" support its contention that "[s]uch nebulous and vague evidence is insufficient as a matter of law to prove the time worked by plaintiffs." Sum. Mem. at 16. Plaintiffs have submitted considerable evidence, including verified questionnaire responses, deposition testimony and declarations demonstrating that they performed off-the-clock work and setting forth good-faith estimates of the number of hours each week for which they were not paid. In fact, plaintiffs have submitted testimony as to the specific amount of time plaintiffs worked on *each task* each week. There is nothing so "fuzzy" about this sworn evidence that warrants the wholesale disregard AT&T demands.

589657_1



Thus, it was not until after this case was filed that management sent such a clear position



AT&T's failed attempts to correct its flawed FLSA policies and practices exhibit not only its

knowledge of persistent patterns of off-the-clock abuse, but also its continued facilitation of and

failure to address adequately continued FLSA violations.

## VIII. Plaintiffs Are Entitled to Compensation for Time Spent Working Off the Clock While Opening and Closing AT&T Stores

### A. Opening and Closing Functions Constitute Work that Requires Compensation Under the FLSA

The Supreme Court in *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956), held a "principal

activity" that must be compensated by an employer is any task that is "an integral and indispensable

589657_1

part [of the work] for which covered workmen are employed."[16]   In contrast, preliminary or postliminary activities for which no compensation is required are those "undertaken 'for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer.'"  *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398 (5th Cir. 1976).  As the Supreme Court held in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005), once an employee engages in a principal activity – or in an activity that is integral and indispensable to a principal activity – the workday has commenced, and the employee must be paid for that activity and all subsequent activities until the end of the workday.  Because nothing could be more integral and indispensable to retail sales and service than opening the retail store at the beginning of the day, all plaintiffs' time spent opening defendant's retail stores is compensable.[17]

Without any real analysis, AT&T simply argues that *Gorman v. Consol. Edison Corp.*, 488 F. 3d 586 (2d Cir. 2007), mandates the opening and closing activities here are noncompensable because waiting to enter or leave MyTime is "analytically indistinguishable from waiting to clock in at a time clock."  Sum. Mem. at 20.  But the conduct here is demonstrably unlike that in *Gorman*.  There, the

---

[16]   *E.g., Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956) (knife-sharpening is "an integral part of and indispensable to the various butchering activities for which [the workers] were principally employed"); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F. 3d 706, 718 (2d Cir, 2001) (powering up and testing an x-ray machine is integral to taking x-rays).

[17]   The Second Circuit has identified six factors determining whether an activity is "integral and indispensable": (1) the degree to which the activity is "undertaken for the employer's benefit"; (2) the degree to which the activity is indispensable to the "primary goal" of the employee's work; (3) the degree to which the employee lacks choice in whether to perform the activity; (4) whether the activity involves something other than traveling to and from work; (5) the ease with which the employer could "maintain records of [the] time expended" on the activity; and (6) whether the amount of work involved is something more than "truly minimal."  *Clark v. City of New York*, No. 06 Civ. 11397(GEL), 2008 WL 3398474, at *7 (S.D.N.Y. June 16, 2008) (citing *Reich v. New York City Transit Auth.*, 45 F.3d 646, 651 (2d Cir. 1995)).  All of these factors support the opening of a retail store as an integral and indispensible part of being able to work in such a store.

589657_1

court found that time spent passing through radiation and explosive material detectors before and after work, as required by the Nuclear Regulatory Commission and plaintiffs' employer, was not connected to plaintiffs' principal duties. *Id*. at 593. The court reasoned such activities were intended to maintain the plaintiffs' security and that anyone entering the plant was required to undergo the same screening. *Id*. at 594. Unlike *Gorman* where employees were not turning on the nuclear plant, AT&T's retail stores do not operate unless plaintiffs unlock, open and prepare the store. Plaintiffs were certainly not engaging in opening and closing stores for any reason other than to advance AT&T's operations.[18]

### B.    The Time Plaintiffs Spent Opening and Closing the Retail Stores Was Not *De Minimis*

The *de minimis* rule does not apply in this case.[19] Three factors are considered in analyzing the *de minimis* issue: "(1) the practical administrative difficulty of recording the additional time; (2) the

---

[18]    The Second Circuit's opinion in *Kosakow*, which held the morning activities of radiological technologists were compensable under the FLSA notwithstanding the Portal-to-Portal Act, is controlling here. To be able to accept patients at 8:00 a.m., plaintiff needed to turn on the x-ray processing machine, allow it to warm up, perform tests on the machine, and help to prepare the office for receiving patients by pulling client files and preparing and performing pretesting procedures for certain tests. 274 F.3d at 715. The court ultimately reversed the district court's order granting summary judgment, finding that material facts existed as to whether it was necessary for plaintiff to arrive early and complete her preparatory work by 8:00 a.m. *Id*. at 716-17.

[19]    The *de minimis* rule, applies only where the time involved is:

> "of a few seconds or minutes duration, and where the failure to count such time is due to . . . industrial realities. *Id*. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him."

*Id*.; *see also England*, 263 F.R.D. at 445 (differentiating plaintiffs' claims from the "split-second absurdities," as referenced in *Mt. Clemens*, that are not covered under the FLSA). Defendant cites *Singh v. City of New York*, 524 F. 3d 361 (2d Cir. 2008) to support its *de minimis* argument. However, *Singh* concerned the extra commuting time that it would take government employees to

size of the claim in the aggregate; and (3) whether 'the claimants performed the work on a regular basis.'" *New York City Transit Auth.*, 45 F.3d at 652 (quoting *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984)); *see also Kosakow*, 274 F.3d at 717. Each of these factors supports plaintiffs' position that the *de minimis* rule does not apply.[20]

First, there is no administrative difficulty in recording this time, and AT&T points to nothing that would prevent it from administratively paying for this time. Second, the size of the claim in the aggregate is substantial. More than 4,100 plaintiffs opted into this case and most opened and closed stores on a regular basis four or five days a weeks; this adds up to a substantial amount of uncompensated time. Third, opening and closing a store while off the clock is a regularly occurring part of plaintiffs' job.

## IX.   The Evidence Shows AT&T's FLSA Violations Were Knowing and Willful, Resulting in a Three-Year Statute of Limitations

An FLSA plaintiff seeking a three-year limitations period readily survives a summary judgment by making "'a competent demonstration that there [is a] trialworthy issue as to whether [the employer] "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."'" *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400 (CM) (DCF), 2010 WL 1379778, at *10 (S.D.N.Y. Mar. 26, 2010) (citing *Lopez v. Corporacion Azucarera de P.R.*, 938 F.2d 1510, 1515-16 (1st Cir. 1991); and *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128,

---

carry a briefcase that they were required to bring to and from work. The court found that the amount of time an employee was slowed down by merely carrying a briefcase was *de minimis* and not compensable. *Id.* at 370-71. In contrast, here, the time spent in opening-and-closing store tasks and waiting to login to MyTime was not inconsequential and not performed in conjunction with some other noncompensable task, as in *Singh*.

[20]     *See also Clark*, 2008 WL 3398474, at *9; *England*, 263 F.R.D. at 446 (finding that fact issues precluded summary judgment on claim for approximately ten minutes of off-the-clock work done while closing the store at the end of each day).

589657_1

133 (1988)).  Moreover, where willfulness is disputed, the court applies the three-year statute of

limitations for purposes of certifying a representative action. *Summa v. Hofstra Univ.*, 715 F. Supp.

2d 378, 388 (E.D.N.Y. 2010) (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369

(S.D.N.Y. 2002)).[21]

 Willfulness exists here because: (1) managers caused unpaid off-the-clock work when

emailing, texting and calling plaintiffs; (2) managers were often present in stores while plaintiffs are

working off the clock during meals and opening and closing duties; (3) managers refused plaintiffs'

requests to make adjustments; (4) AT&T's internal monitoring shows off-the-clock work in the few

areas where they monitor; (5) MyTime records show a systemic failure to adjust timekeeping so as

to record and pay for all hours worked; (6) COU records evidence off-the-clock work; (7) AT&T has

been subject to repeated complaints, claims and lawsuits regarding unlawful off-the-clock work

practices; and (8) AT&T has internally acknowledged these problems but has still failed to fix them,

thereby allowing them to continue.[22]  At the very least, the facts and evidentiary support detailed

---

[21] A two-years statute of limitations applies to a claim for unpaid overtime under the FLSA
unless the claim arises from a willful violation. 29 U.S.C. §255(a); *Herman v. RSR Sec. Servs.*, 172
F.3d 132, 141 (2d Cir. 1999). An employer willfully violates the FLSA only if it "either knew or
showed reckless disregard for the matter of whether its conduct was prohibited by the statute."
*McLaughlin*, 486 U.S. at 133; *Clarke*, 2010 WL 1379778, at *10. Proof of willfulness requires a
"factual showing" of an employer's knowing or reckless violation of the FLSA. *See Saunders v.
City of N.Y.*, 594 F. Supp. 2d 346, 358 (S.D.N.Y. 2008); *see also Torres v. Gristede's Operating
Corp.*, 628 F. Supp. 2d 447, 465 (S.D.N.Y. 2008) (finding three-year statute of limitations applied,
reasoning that "[g]iven Gristede's failure to demonstrate that it undertook to inquire whether its
conduct was in compliance with the FLSA . . . there are no genuine issues of material fact as to
whether Gristede's violations of the FLSA were willful"). 29 U.S.C. §255(a); *see also Chao v. A-
One Med. Servs.*, 346 F.3d 908, 919 n.7 (9th Cir. 2003) (willfulness under the FLSA is a question of
fact for the jury); *Fowler v. Land Mgmt. Group Inc.*, 978 F.2d 158, 162-63 (4th Cir. 1992).

[22] AT&T's knowledge is further demonstrated by the fact that its Chief Executive Officer had
knowledge of and passively acquiesced to the nationwide practice of refusing to compensate
plaintiffs for their off-the-clock work. *See* Rothman Decl., Ex. 16 (Hunter) 78:10-80:12.

through this opposition create material issues of fact regarding AT&T's knowledge that cannot be resolved on summary judgment.

Further evidence of AT&T's knowledge that its policies, practices and procedures cause employees to work unpaid overtime is found in U.S. Department of Labor ("DOL") claims and private party litigation over this improper conduct.[23] ████████████████████████████

████████████████████████████████████████████████ *See* Rothman Decl., Ex. 56; Kroub Decl., Ex. 87 (Robinson) 14:19-16:11; 26:20-27:14.

AT&T has settled many, if not most, of these prior cases, thereby providing many millions of dollars in previously unpaid overtime wages to retail store employees. The existence of these prior

---

[23]     As early as January 11, 2005, AT&T's acquired predecessor, Cingular Wireless, entered a consent decree with the DOL, whereby it agreed to set aside $5.1 million for unpaid compensation for employees after the Secretary of Labor filed a complaint alleging FLSA violations for unpaid overtime due to Customer Service Representatives. Kroub Decl., Ex. 113 at 1, 2. While this DOL consent decree related to employees at AT&T call centers, the evidence shows AT&T had policies, practices and procedures that encourage FLSA violations on a company-wide basis. Indeed, AT&T has faced repeated claims in litigation and DOL complaints alleging it failed to pay its retail store RSCs and ASMs for all overtime worked. For instance, on March 24, 2006, AT&T predecessor, Cingular Wireless, was a named defendant in a class action complaint filed in California Superior Court for Alameda County, alleging it failed to provide meal and rest breaks and worked retail store employees off the clock without proper compensation. Kroub Decl., Ex 106 at ¶17. On May 22, 2006, another class action against Cingular Wireless was filed in U.S. District Court for the Central District of California alleging it failed to pay RSCs and ASMs for all overtime hours worked and failed to provide meal and rest breaks. Ex. 107. On October 30, 2007, AT&T was again sued in an FLSA collective action and state law class action filed in the U.S. District Court, District of Massachusetts, alleging off-the-clock work practices on behalf of RSCs and ASMs and seeking to recover unpaid overtime. *See* Ex. 104 at ¶2. On or about October 26, 2007, AT&T was named in a class action filed in the Circuit Court for Montgomery County Maryland seeking to recover unpaid wages and overtime compensation on behalf of RSCs and other employees who worked at Maryland retail stores. Ex. 105 at 1. AT&T has also been named as defendant in numerous DOL complaints alleging FLSA violations brought by retail store employees, including DOL cases filed 9/14/06; 1/10/07; 3/5/07 and 8/4/08. *See* Rothman Decl., Ex. 56 at 2. After this case was filed in October 2008, AT&T was named in at least another 20 separate DOL complaints alleging FLSA violations for failure to properly pay overtime or similar FLSA violations filed by retail sales employees working in California, Massachusetts, Colorado, Vermont, Kansas and Illinois. *See id.* at 2-3.

589657_1

complaints alleging FLSA and state law violations regarding overtime is a key determinant of whether the FLSA violations here should be found "willful" for the purpose of applying the FLSA's three-year statute of limitations.

Accordingly, the Court should deny AT&T's summary judgment motion as to those plaintiffs who worked for AT&T during the three-year limitations period.

## X.    CONCLUSION

AT&T fails to demonstrate that any material issue can be resolved as a matter of law and consequently its summary judgment motion must be denied in its entirety.[24]

DATED:  December 22, 2010                Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         ROBERT M. ROTHMAN
                                         EDWARD Y. KROUB
                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         rrothman@rgrdlaw.com
                                         ekroub@rgrdlaw.com


                                         _____
                                                /s/ Edward Y. Kroub
                                              EDWARD Y. KROUB

---

[24]    The "straight time" plaintiffs worked is a factor to be considered in plaintiffs' damages presentation.  It is not a matter for which plaintiffs seek separate recovery and not a matter for summary adjudication.

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
STEVEN W. PEPICH
JAMES A. CAPUTO
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
stevep@rgrdlaw.com
jimc@rgrdlaw.com

PELTON SERPE LLP
BRENT E. PELTON
111 Broadway, 9th Floor
New York, NY  10006
Telephone:  212/725-3600
212/385-4600 (fax)

*Attorneys for Plaintiffs*

589657_1

**CERTIFICATE OF SERVICE**

I, Edward Y. Kroub, hereby certify that on December 22, 2010, I caused a true

and correct copy of the attached:

Corrected Plaintiffs' Opposition to Defendant AT&T Mobility, LLC's Motion for
Summary Judgment [redacted version]

to be served electronically on all counsel registered for electronic service for this case

_____ /s/ *Edward Y. Kroub* _
Edward Y. Kroub